**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| LARRY EDWARD DILLON,<br><br>Plaintiff,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, WEST GROUP and THE THOMSON LEGAL PUBLISHING CORPORATION, BLACK AND WHITE CORPORATION and DOES I through X, inclusive,<br><br>Defendants. | 3:03-CV-00203-ECR-RAM<br><br>**ORDER** |

This case arises out of an employee's termination in violation of the Age Discrimination in Employment Act ("ADEA"). The case has been tried twice to a jury; the second time the only issue presented to the jury was the determination of the amount of back pay damages.

There are three motions now pending before the Court. First is Defendants' Motion (#208) for a New Trial or Remittitur filed on July 23, 2008. Plaintiff filed an Opposition (#218) to the motion on September 16, 2008, to which Defendants filed a Reply (#219) on September 30, 2008. Second is Plaintiff's Motion (#209) To Amend the Judgment and To Add Prejudgment Interest, filed on July 24, 2008. Defendants filed an Opposition (#215) to the motion on August 11, 2008, and Plaintiff filed a Reply (#217) on August 25,

2008. Third is Plaintiff's Application (#210) for Fees and Costs filed on July 24, 2008. Defendants opposed (#214) that motion on August 11, 2008, and Plaintiff replied (#217) on August 25, 2008.

The motions are now ripe, and we will address each in turn. For the reasons set forth below, Defendants' Motion (#208) for a New Trial or Remittitur is denied, Plaintiff's Motion (#209) To Amend the Judgment and To Add Prejudgment Interest is granted, and Plaintiff's Application (#210) for Fees and Costs is granted in part and denied in part.

## I. Background

The parties are familiar with the background of the case; we pause only briefly to outline some of the relevant procedural history. In September 2007, a jury found that Plaintiff Larry Dillon's employer, West Publishing, unlawfully terminated him in violation of the Age Discrimination in Employment Act and awarded him $1,887,747 in back pay damages. The jury awarded Plaintiff $0 in front pay. Nevertheless, the jury found that the violation was "willful," and the Court doubled the back pay award as a result.

Following the trial, Defendants West Publishing Corporation and The Thomson Corporation (collectively "Defendants") argued that Plaintiff did not timely disclose his damages calculation, and they moved for a new trial based on this alleged discovery misconduct. The Court agreed and on January 3, 2008, ordered a new trial as to the issue of back pay damages only. In addition, the Court found that Defendants were entitled to judgment as a matter of law with respect to the "willful" finding. As a result, the Court vacated

(#143) the judgment on January 4, 2008. The new trial was held in July 2008, and the jury returned a verdict in favor of Plaintiff in the amount of $1,730,041.25 in back pay. Judgment (#206) was entered accordingly on July 10, 2008.

**II. Defendants' Motion for New Trial or Remittitur (#208)**

**A. New Trial**

Defendants argue first that the Court should order a new trial because the evidence supporting the back pay award "is false" and a new trial is needed to "prevent a miscarriage of justice." (D.'s Mtn. 11 (#208).) Federal Rule of Civil Procedure 59 allows a district court to grant a new trial "to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. PRO. 59(a).

There is no fixed standard to apply when granting or denying a new trial; instead, the decision is within the discretion of the district court and "varies with the grounds for which relief is sought." 12 JAMES WM. MOORE, FEDERAL PRACTICE § 59.13[1] (3d ed. 2008) (hereinafter "FEDERAL PRACTICE"). While a district court looks for "substantial evidence" to support the verdict for judgment as a matter of law, Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1013-1014 (9th Cir. 1985), in a motion for a new trial, a court is left to its own discretion, Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir. 1976) (to avoid a miscarriage of justice, a trial court may grant a new trial "even though the verdict is supported by substantial evidence").

Typical grounds for granting a new trial include that the verdict is "against the clear weight of the evidence, that damages are excessive, that the trial was not fair, or that substantial error occurred in the admission or rejection of evidence or the giving or refusal of instructions." 12 FEDERAL PRACTICE § 59.13[1] (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)); e.g., Minthorne v. Seeburg Corp., 397 F.2d 237 (9th Cir. 1968) (allowing new trial because size of the verdict was against the weight of the evidence). In general, a court will disturb a jury verdict only in extreme circumstances, such as where there is an "abuse of the jury's function" or to prevent "manifest injustice." 12 FEDERAL PRACTICE § 59.13[2][a]; e.g., In re First Alliance Mortgage Co., 471 F.3d 977, 1001 (9th Cir. 2006) ("Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it is 'clearly not supported by the evidence' or 'only based upon speculation or guesswork.'") (quoting L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 791 F.2d 1356, 1360 (9th Cir. 1986)). A court should not simply substitute its findings for those of the jury. 12 FEDERAL PRACTICE § 59.13[2][f][iii].

Defendants argue that the Court should order a new trial because Plaintiff claimed purportedly unsubstantiated losses on his tax returns that he used to offset his income. These losses lowered the amount of his mitigating income and thus increased the amount of claimed back pay. (D.s' Mtn. 11-12 (#208).) The losses were documented by Plaintiff's Schedule Cs, which were subject to limited verification during the retrial. Plaintiff's accountant did not testify — the Court denied Defendants' request to depose

the accountant before the retrial — and Plaintiff did not produce supporting documentation. Plaintiff responds that Defendants made these arguments to the jury, and still the jury found in Plaintiff's favor. (P.'s Opp. 3 (#218). Further, Plaintiff contends that Defendants could have subpoenaed Plaintiff's accountant, but elected not to do so, and that Plaintiff testified as to the veracity of the Schedule Cs.

In particular, Defendants' objection is that Plaintiff should have used his total income (Tax Form 1040 line 22), not his total wages (line 7), as the subtrahend in his damages calculation. Had Plaintiff followed Defendants' method of calculation, then Plaintiff would not have deducted the $264,545 in Schedule C expenses. This would increase Plaintiff's income by that amount and lower his award of back pay by that amount. In the alternative, Plaintiff could have documented better the Schedule C expenses.

Ordering a new trial is not necessary. There is nothing other than Defendants' assertion supporting the notion that Plaintiff's tax returns were false. The jury chose to believe that Plaintiff's tax returns were true. Defendants presented their argument to the jury, and the jury rejected their claims. Nothing in the record demonstrates that Plaintiff's evidence was false, nor does anything in the record indicate that a new trial is needed to prevent a miscarriage of justice.

Defendants next argue that Plaintiff failed to mitigate his damages by quitting his job with CCH in 2005, turning that job over to his wife, and then deducting her income from his in his damages'

calculation for that year. (D.s' Mtn. 13 (#208).) This argument, too, was rejected by the jury. The jury was instructed that, while Plaintiff had a duty to mitigate his damages and that Defendants were "not required to compensate the plaintiff for avoidable damages," Defendants had the burden to prove any reduction in an award of back pay by a preponderance of the evidence. (Instruction No. 28 (Order #207).) Instruction Number 28 was given by stipulation, without modification. The jury found, based on the evidence before it, that Defendants did not prove that Plaintiff did not properly mitigate his damages.

Before the first trial, Defendants had the opportunity to gather evidence relating to the issue of damages. They chose not to follow that path and instead focused on the liability issue. Plaintiff has twice presented his theory of damages to different juries; both times the juries came back with similar awards. This does not appear to be an extreme case where the Court should disturb the jury's verdict.

**B. Remittitur**

Failing the receipt of a new trial, Defendants contend that the Court should order remittitur because the damage award is excessive. (D.s' Mtn. 13 (#208).) As an alternative to ordering a new trial, a trial court may offer to a party the opportunity to accept a lower verdict. Denholm v. Houghton Mifflin Co., 912 F.2d 357, 361 (9th Cir.), cert. denied 501 U.S. 1212 (1990). This remittitur alternative is appropriate "where no clear judicial error or pernicious influence can be identified, but where the verdict is so large as to shock the conscience of the court."

CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 11 FEDERAL PRACTICE & PROCEDURE § 2815 (2d ed. 1995) (hereinafter "WRIGHT & MILLER") (quoting Abrams v. Lightolier, 841 F. Supp. 584 (D. N.J. 1994)); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996) (reducing punitive damage award). Whether a new trial or remittitur is appropriate is "committed to the sound discretion of the trial court." 11 WRIGHT & MILLER § 2815. The court may not, however, arbitrarily reduce an award. See Kennon v. Gilmer, 131 U.S. 22, 29-30 (1889).

Defendants aver that the proper amount of remittitur is the maximum award sustained by the evidence. (D.s' Mtn. 14 (#208).) The basis for their claim, however, is simply that the jury's award was excessive in light of the Schedule C deductions. Defendants cross-examined Plaintiff at length with respect to his tax returns, and the jury found that Plaintiff testified credibly. In light of this testimony, the jury came up with an appropriate calculation. The jury's award, while significant, does not shock the conscience of the Court.

**C. Alter the Judgment**

Defendants next argue that the Court should alter or amend the judgment under Federal Rule of Civil Procedure 59(e) because the Court made an initial decision that was manifestly unjust. (D.s' Mtn. 15 (#208).) To wit, Defendants contend that the Court should not have denied Defendants discovery of Plaintiff's accountant, Plaintiff's wife, Plaintiff's recent employers, and Plaintiff's supporting documentation for his Schedule Cs before the retrial.

As explained above, Defendants had the opportunity to depose Plaintiff's accountant, Plaintiff's wife, Plaintiff's employers,

and to gather information with respect to damages before the first trial. The Court gave Defendants a second bite at the apple after determining that Plaintiff engaged in discovery misconduct by not disclosing fully his theory of damages. At the retrial, Defendants were allowed to cross-examine Plaintiff extensively on all of the above issues; the jury believed Plaintiff's version of events. While Plaintiff could have done a better job of documenting his Schedule C deductions, nothing in the record indicates that this Court should alter the jury's award of over $1.7 million. Defendants' theories were rejected by the jury, and the Court will not disturb the jury's conclusions.

## **III. Plaintiff's Motion To Amend the Judgment To Add Prejudgment Interest (#209)**

Plaintiff seeks to amend the judgment in this case to allow prejudgment interest on the back pay award in the amount of $310,141. Plaintiff has attached to his motion a calculation that adjusts the award for prejudgment interest on a compound rate, so that interest of subsequent time periods accrues on interest from prior time periods.

An award of prejudgment interest for an ADEA claim is left to the district court's discretion. Kelly v. Am. Std., Inc., 640 F.2d 974, 982 (9th Cir. 1981). In Kelly, the District Court for the Eastern District of Washington awarded an ADEA plaintiff prejudgment interest on the plaintiff's back pay award. Id. at 976. On appeal, the Ninth Circuit affirmed. Id. at 982-83. The Ninth Circuit reasoned that the ADEA is enforced through the

"remedial rights and procedures of the Fair Labor Standards Act (FLSA)," id. at 977-78, and that FLSA law was "directly applicable" to ADEA, id. at 982. Thus, the court held that to assure "equitable relief under the ADEA, the loss of use of [back pay wages] . . . should be compensated by payment of interest." Id.; Criswell v. W. Airlines, Inc., 709 F.2d 544, 557 (9th Cir. 1983) (holding that "the district court properly exercised its equitable powers by awarding the [ADEA] plaintiffs prejudgment interest on their back pay awards"), aff'd 472 U.S. 400 (1985). It seems appropriate to award Plaintiff prejudgment interest to compensate him for his loss of use of wages.

Interest on money judgments in civil cases "shall be compounded annually." 28 U.S.C. § 1961(b). The rate shall be "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." Id. § 1961(a) (footnote omitted). Judgment in this case was entered (#206) on July 10, 2008. The weekly average 1-year constant maturity Treasury yield, as of July 4, 2008, was 2.35 percent. See http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt.

Contrary to Plaintiff's calculation, we do not deem it appropriate to calculate the amount by compounding lost income on a monthly basis; rather, the amount should be compounded annually. We also note that Plaintiff's proposed "lost income" calculations total $1,729,981.00 even though the jury returned a verdict of

$1,730,041.25.[1] Nevertheless, the individual annual lost income amounts proposed appear to be reasonable, so the Court will use those individual allocations along with the rate of 2.35 percent, compounded annually. Thus, Plaintiff will be entitled to $182,910.55 in prejudgment interest.

## IV. Plaintiff's Application for Fees and Costs (#210)

Attorney fees are authorized under the ADEA. Kelly, 640 F.2d at 986. Defendants do not dispute this, but take issue with the amount Plaintiff's counsel — Mr. Rumph — seeks for additional fees incurred after the first trial and for legal services rendered by Plaintiff's prior counsel.

Defendants argue that they should not be required to pay for fees associated with the new trial because the new trial was granted due to Plaintiff's discovery misconduct. We agree. The first trial judgment was entered on September 21, 2007, and the new trial was granted on January 3, 2008. Accordingly, the attorney fee award will be reduced to exclude the period following January 3, 2008. Mr. Rumph's records indicate that he spent 116.2 hours on the case after January 3, 2008. At his hourly rate of $325, the award should be reduced from the claimed amount of $185,510 by $37,765 for a total of $147,745. Similarly, Plaintiff will not be

---

[1] Plaintiff's calculation is based on the following losses. 1999: $93,435. 2000: $236,413. 2001: $213,700. 2002: $154,480. 2003: $161,373. 2004: N/A. 2005: $205,303. 2006: $269,053. 2007: $264,149. 2008: $132,075. Total: $1,729,981. Plaintiff was terminated in September 1999; therefore, the award for interest for 1999 should be calculated on September through December only. Judgment was entered on July 10, 2008, so the award for interest for 2008 should be calculated from January 1 through July 10, 2008.

entitled to costs/additional expenses — as outlined in his application (#210) — associated with the new trial.

Defendants next argue that they should not have to pay the $14,549.73 that Plaintiff owes to his prior counsel because the claims of prior counsel were abandoned at the summary judgment stage. In civil rights actions, the Ninth Circuit has counseled that lower courts follow a two step inquiry in determining whether to award attorney's fees when a plaintiff did not succeed on all of his claims:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.
>
> Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

Here, the claims that Plaintiff abandoned were not related to his successful claims.[2] The abandoned claims alleged theories of

---

[2]Mr. Rumph has previously conceded this point. Shortly after changing attorneys, Plaintiff's prior counsel sought to force Plaintiff to pay the prior firm for services rendered by filing a Motion (#44) to Enforce Judgment/Attorney Lien. Mr. Rumph opposed (#46) the motion in behalf of Plaintiff, where he indicated that the prior firm's work was not "necessary." (Opp. 1 (#46).) In addition, he argued that the "applicant firm initiated this lawsuit with claims that have now been abandoned." (Id.) Mr. Rumph also recognized that prior counsel did not pursue the ADEA claim and that this "was a huge issue" later in amending the complaint. In sum, Mr. Rumph argued that Plaintiff's prior counsel's work was neither necessary nor relevant to the subsequently added and successful ADEA claim.

recovery independent from a claim of age discrimination, such as civil conspiracy, tortious constructive discharge in violation of public policy, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Thus, Defendants should not bear the costs of Plaintiff's prior counsel.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

**V. Conclusion**

The Court finds no reason for granting a new trial or ordering remittitur. The judgment should be amended to permit Plaintiff to recover prejudgment interest, as permitted by the ADEA. Plaintiff's counsel is entitled to attorney's fees, but not for those fees incurred after the granting of the new trial on January 3, 2008.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion (#208) for a New Trial or Remittitur is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion (#209) To Amend the Judgment To Add Prejudgment Interest is **GRANTED**, and the judgment shall therefore be increased by $182,910.55 for a total of $1,912,951.80.

**IT IS FURTHER ORDERED** that Plaintiff's Application (#210) for Fees and Costs is **GRANTED** in part and **DENIED** in part. Plaintiff's attorney is awarded $147,745 in attorney's fees. Plaintiff shall not be awarded attorney's fees for his prior counsel claimed in the amount of $14,549.73.

DATED this 9th day of December, 2008.

Edward C. Reed.

UNITED STATES DISTRICT JUDGE