1    Paul J. Georgeson, Esq.
     Nevada State Bar No. 5322
2    McDonald Carano Wilson LLP
     100 West Liberty St., 10th Floor
3    P.O. Box 2670
     Reno, NV  89505-2670
4    Telephone: 775-788-2000
     Facsimile:  775-788-2020
5
     James F. Rittinger, Esq.
6    Satterlee Stephens Burke & Burke LLP
     230 Park Avenue
7    New York, NY  10169-1179
     Telephone:  212-818-9200
8    Facsimile:   212-818-9606

9    Attorneys for Defendants

10              IN THE UNITED STATES DISTRICT COURT

11                 FOR THE DISTRICT OF NEVADA

12                           * * * * *

13   LARRY EDWARD DILLON,              Case No. CV-N-03-0203-ECR (RAM)

14              Plaintiff,

15        vs.

16   WEST PUBLISHING CORPORATION,
     WEST GROUP and THE THOMPSON
17   LEGAL PUBLISHING CORPORATION,
     THE THOMPSON CORPORATION,
18   BLACK AND WHITE CORPORATION
     and DOES I through X, inclusive,
19
                Defendants.
20   _____/

21       **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
                **PLAINTIFF'S MEMORANDUM RESPECTING**
22          **PLAINTIFF'S UNTIMELY SERVICE OF PROCESS**

23

24

25
     1095280_2

1    Defendants West Publishing Corporation and The Thomson Corporation (collectively

2  "Defendants" or "West"), by and through their attorneys, Satterlee Stephens Burke & Burke

3  LLP and McDonald Carano Wilson LLP, respectfully submit the following memorandum of

4  points and authorities in opposition to the points and authorities filed by plaintiff Larry Dillon

5  on March 3, 2011, with respect to whether service of process on Defendants was proper under

6  Nevada law, as directed by Order of this Court dated February 17, 2011.

7                                    **PRELIMINARY STATEMENT**

8    In accordance with the mandate of the United States Court of Appeals for the Ninth

9  Circuit, the task before this Court is to determine whether plaintiff can show – and plaintiff

10 does not dispute that it is clearly his burden – "good cause" for the failure to serve West with

11 the complaint in this action within 120 days of filing, as required by Nevada law.  In his

12 submission ("Pl.'s Br."), plaintiff does not claim that any difficulties hindered his ability to find

13 or to serve West.  He does not claim that he received any extension of time to serve, either by

14 agreement with West or from the Nevada state court that originally had jurisdiction of this case.

15 He does not, in fact, claim to have made any attempt whatsoever to fulfill his obligation to

16 effect service on West until well over a year after the time to complete that service had expired.

17    The *sole* assertion made by plaintiff to attempt to demonstrate "good cause" for taking

18 573 days to serve West is his current counsel's claim that "plaintiff's former counsel was

19 clearly waiting on the administrative process to finish before serving the complaint."  (Pl.'s Br.

20 at 2.)  This claim, however, simply cannot suffice to carry plaintiff's burden, for a number of

21 reasons:

22    • Plaintiff submits no admissible, competent *evidence* that "waiting on the
      administrative process to finish" was actually the reason why he waited 573
23      days to serve West, or indeed that this played any role whatsoever in the
      inordinate delay.  The unsworn assertions of current counsel – who did not

24

25
   1095280_2

appear in this case until well after the events material to the service issue – plainly cannot suffice as a basis for the good cause showing plaintiff must make.

- When plaintiff's original counsel opposed West's motion to dismiss for untimely service in 2003, they did not make this "waiting on the EEOC" argument, nor did they submit any evidence – such as an affidavit from counsel attesting to this purported "reason."

- In 2006, as both current counsel and former counsel argued before this court about whether an attorneys' fee lien was appropriate given the late service, *neither* told this Court that the service was due to waiting on the EEOC. Instead, former counsel represented to this Court that the delay was due to the failure of plaintiff himself to "cooperate with counsel," while current counsel, Mr. Rumph, told this Court in two separate filings that the delay was due to "lack of diligence" by the former counsel.

- Another fact that clearly belies this newly invented claim that the delay was due to waiting on the EEOC is that even after receiving a right-to-sue letter, plaintiff waited another 5 months to serve the complaint – and then, only after the state court *sua sponte* threatened to dismiss for lack of service – and over a *year* to amend the complaint to add the ADEA claim that was before the EEOC. Moreover, this Court denied equitable tolling on the ADEA claim because plaintiff "provided no reason or explanation why he waited over a year to amend his complaint."

- This explanation – even if it were supported with evidence – simply makes no sense. The original complaint in this action contained several common-law claims – e.g., breach of contract – but did not allege a claim under the ADEA. Not only was "administrative exhaustion" not required for such claims, it is not even possible.

- Even more importantly, unlike Title VII or other federal discrimination claims, a claim under the ADEA does not require the EEOC (or similar state agency) to issue a right-to-sue letter before suit may be brought. Administrative exhaustion requires only a filing with the agency and then a delay of 60 days. Plaintiff could have filed his ADEA claim as early as July 2000 – well over a year before he even filed his suit in Nevada state court, and almost *3 years* prior to his actually serving West.

The bottom line, however, is that even if these newly minted claims of plaintiff's counsel were credible (which they are not), they do not remotely establish "good cause" under Nevada law. Plaintiff's story, in effect, is that he filed suit in August 2001 in order to stop the limitations clock from running on his claims, and then unilaterally decided that it would be somehow more "efficient" to await an EEOC determination on the ADEA claim (that was not

1   even asserted in the filed complaint) and thus that he need make no efforts – at all – to fulfill

2   his obligation to effect service.  Nevada law, however, does not countenance this sort of

3   gamesmanship and its courts have never suggested that this supposed "reason" can suffice to

4   excuse late service of this magnitude.  Indeed, Nevada courts have never excused service even

5   remotely as late as plaintiff's, period.

6        Plaintiff's submission has done nothing to alter this Court's original determination –

7   that plaintiff's showing was, at best, "weak."   This statement is, if anything, a gross

8   understatement.  Plaintiff has failed to establish good cause for waiting 527 days to serve West,

9   and in accordance with the mandate of the Ninth Circuit, his complaint must now be dismissed

10   with prejudice.

11   **ARGUMENT**

12   **I.   PLAINTIFF HAS SUBMITTED NO COMPETENT, ADMISSIBLE EVIDENCE OF "GOOD CAUSE"**

13        Because plaintiff waited until 527 days after filing the complaint in this action to serve

14   – as this Court put it, "widely miss[ing]" Nevada's requirement of 120 days – Nevada Rule of

15   Civil Procedure 4(i) makes it clear that plaintiff has the burden to demonstrate "good cause,"

16   (i.e., a "legitimate excuse") for this egregiously delayed service.  Otherwise, dismissal is

17   mandatory.  *See Scrimer v. Eighth Jud. Dist. Ct.*, 998 P.2d 1190, 1193 (Nev. 2000).  In other

18   words, plaintiff must provide this Court, first and foremost, with *evidence* that actually

19   establishes the reason for his failure to meet the 120-day requirement.

20        What plaintiff has done, however, is offer up merely the argument of his current

21   counsel, Mr. Rumph, that plaintiff's "former counsel was clearly waiting on the administrative

22   process to finish before serving the complaint."  (Pl.'s Br. at 2.)  While plaintiff submits

23   evidence to show the uncontested fact that there was, in fact, an EEOC charge pending, he

24

25

1095280_2

1   submits no evidence whatsoever to support the claim that this pending charge was in any way

2   responsible for the delay in service.

3         Moreover, Mr. Rumph's assertions as to the reason should carry no weight, because he

4   was not counsel at the time of the service delay.  Mr. Rumph did not enter an appearance for

5   plaintiff until June 2004 [Dkt. #30], well after not only the eventual service of West but the

6   amendment of the complaint to add the ADEA claim.  Indeed, it is fairly clear from Mr.

7   Rumph's statement that at best he is merely surmising the reason; it seems much more likely, in

8   fact, that he simply has crafted it himself.  In any event, it is only plaintiff's former counsel,

9   Demetras & O'Neill, or perhaps plaintiff himself, who could provide competent evidence as to

10   the actual reason why service was so delayed.  However, no such evidence has been offered by

11   the plaintiff or submitted to the Court.

12         Plaintiff's counsel suggests, in a footnote, that he would like to submit a declaration

13   form former counsel, but "was uncertain whether new evidence would be permitted." (Pl.'s Br.

14   at 2 n.1.)  Plaintiff – and his former counsel – of course had ample opportunity to submit such

15   evidence back in 2003 in opposition to West's motion to dismiss, and chose not to (or, more

16   likely, were unable to truthfully do so).  Even assuming that supplementation were appropriate,

17   what is *not* appropriate is for plaintiff to fail to submit his proposed evidence on his opening

18   brief, thus depriving West of the opportunity to comment on it.  Assuming plaintiff even can

19   obtain such a declaration, there was absolutely no valid reason why he could not have

20   submitted it on his opening brief, even if he was "uncertain" whether it would be accepted.

21   Particularly given the contradiction that any such declaration (assuming it supported plaintiff's

22   "waiting on the EEOC" argument) would present with the statements already in the record

23

24

25

      5

1095280_2

1    regarding the reason for the delay, plaintiff should not be allowed to submit his proposed

2    declaration of former counsel.[1]

3    **II.     PLAINTIFF'S CLAIM REGARDING ADMINISTRATIVE EXHAUSTION IS
             INCONSISTENT WITH PRIOR STATEMENTS AND ACTIONS OF COUNSEL**

4

5           Even if plaintiff had provided some evidence of the claim he now makes – which he has

     not – this story is simply not worthy of credence, because it is inconsistent with what plaintiff
6
     and his counsel, both current and former, have already said about the delayed service issue.  In
7
     2003, on West's motion to dismiss, plaintiff recognized that he needed to demonstrate good
8
     cause for the failure to serve within 120 days.  Yet, the brief submitted by his former counsel
9
     did not say that the reason for the delay was that plaintiff was waiting on the EEOC to issue a
10
     right-to-sue letter.  Certainly, plaintiff submitted no admissible evidence that this was so.
11
            In his recent submission, plaintiff's current counsel asks this Court to simply *infer* the
12
     conclusion he prefers, because "[w]hy would [plaintiff's former counsel] attach the NERC
13
     filings to the opposition to the motion to dismiss?" (Pl.'s Br. at 2.)  The answer is simple:
14
     plaintiff's counsel was attempting to show that West had knowledge of the EEOC
15
     proceedings.[2]  *See* Pl.'s Dismiss. Opp. [Dkt. #11] at 4.  It was plaintiff's (erroneous) position
16
     that this was one of the factors that could establish "good cause" under federal law, purportedly
17

18          [1] At a minimum, before the Court accepted any such evidence as a basis for its
     determination of good cause, West should be afforded an opportunity to depose and cross-
19   examine plaintiff's former counsel, especially since if plaintiff's former counsel were to
     provide an affidavit as Mr. Rumph surmises, that would be directly contradictory to the
20   statements made during the 2006 lien dispute, *see infra*.

21          [2] As discussed in West's opening brief, the fact that West had knowledge of the
     NERC/EEOC proceedings does not in any way establish good cause, because (1) knowledge of
22   the agency proceedings in no way gave West knowledge of the filed lawsuit, because no ADEA
     claim was made in the original complaint; and (2) Nevada courts have made clear that the
23   *Scrimer* factor for "the defendant's knowledge of the existence of the lawsuit" is pertinent only
     insofar as it establishes purposeful evasion of service by the defendant, which clearly did not
24   happen and has never been claimed by plaintiff here.  *See* West Br. at 10-11.

                                                  6

25

1    pursuant to *Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991).[3]  The inclusion of the agency

2    papers themselves cannot support a claim that awaiting agency action was the *reason* why

3    plaintiff did not serve in a timely fashion, anymore than current counsel's inclusion of those

4    same documents today is evidence for such a conclusion.

5         Not only is plaintiff's position today different from the position taken in 2003, it is

6    directly contradicted by the positions taken by *both* his current and former counsel in 2006,

7    when plaintiff's former counsel sought an attorneys' fee lien.   Plaintiff's former counsel

8    represented to this Court that the reason why service had been delayed so long:

9        The Plaintiff is responsible for the delay in service of the complaint in that he
         failed to timely provide his counsel documentation concerning his employment.

10       At the time the complaint was filed, he worked for a subsidiary of the Defendant
         and that company was in transformation.  The Plaintiff was required to provided

11       [sic] documentation to his counsel concerning those entities.   Although he
         constantly promised such documents, *his failure to cooperate with counsel* in

12       their provision led to the delay.

13    Dkt. # 53, at 2-3 (emphasis added).  There is not one word about the supposed delay being due

14    to the EEOC's inaction, although presumably if that were true, and were it actually a valid

15    reason for the delay, plaintiff's counsel would have said so.

16         More telling, however, are the statements made by *current* counsel in an attempt to

17    deny former counsel its fees due to the delay in service.  Mr. Rumph made not one but two

18    filings with this Court representing that plaintiff should not have to pay former counsel's fees

19

20    _____

21       [3] *Boudette* was an application of federal, not Nevada law, and is therefore inapposite.
   However, plaintiff was flatly wrong even in his construction of the case.  *Boudette* did not say
   that notice to the defendant was a factor in establishing good cause, it said that "[a]t a

22    minimum, "good cause" means excusable neglect. A plaintiff may *also* be required to show the
   following: (a) the party to be served personally received actual notice of the lawsuit; (b) the

23    defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his
   complaint were dismissed."  923 F.2d at 756.  Indeed, plaintiff in that case attempted to show

24    that defendant had actual notice, and the court dismissed that showing as "irrelevant," since

25    1095280_2

1    because the delay in effecting service was wholly due to "lack of diligence" on the part of

2    former counsel.  *See* Dkt. # 46, 51.  If the delay in service was, as Mr. Rumph now says, a

3    perfectly reasonable strategy on the part of counsel to "preserv[e] resources," then why was he

4    asking this Court to deny fees?  Sadly, what this record demonstrates is that plaintiff and his

5    current counsel will simply take any position with this Court that they think suits their needs at

6    any given time, regardless of whether the prior representations directly conflicts with prior

7    representations to this Court.  And yet, plaintiff asks this Court to find "good cause" based on

8    nothing more than the representations of counsel as to why service was so delayed.

9         The strongest evidence, however, that "waiting on the EEOC" had nothing to do with

10   the delay in service was that, even once the EEOC issued the right-to-sue letter, plaintiff still

11   did not serve West for another five months – even though under the ADEA he had only 90 days

12   before his claim would become time-barred.  And that service apparently came only because

13   the Nevada court threatened, *sua sponte*, to dismiss the case for failure to effect service.[4]  *See*

14   Georgeson Opp. Aff., Ex. A.  This is, to say the least, odd behavior for a plaintiff who was, the

15   Court is now told, simply "waiting on the administrative process" to complete.

16        Indeed, as the Court will recall, plaintiff did not even seek to add the ADEA claim to

17   his complaint until over a year after receiving his right-to-sue letter, i.e., long after the 90-day

18

19   "actual notice is relevant only if [plaintiff] is also able to show excusable neglect for failing to
     serve the complaint within 120 days of filing," which plaintiff did not do.  *Id.* at 755 n. 1.

20        [4] Plaintiff points this Court to his motion in state court, filed January 13, 2003 seeking
     an extension of time in which to serve.  What plaintiff conveniently fails to bring to this Court's
21   attention, however, is that this motion was prompted by the state court's issuance of an order to
     show cause ten days earlier noting the absence of proof of service on file and requiring Dillon
22   to respond within ten days or have the case be dismissed.  *See* Georgeson Opp. Aff., Ex. A.
     Plaintiff's "response" was to file the motion for an extension, but he did not submit any
23   evidence to support a finding of good cause for the failure to serve, as he plainly was required
     to do under Nevada law.
24

25
     1095280_2

1  limitations period had expired.  And this Court expressly refused to apply equitable tolling to

2  excuse the delay:

> Plaintiff … has no independent basis for equitable tolling.  Plaintiff was
> represented by counsel at the time the right to sue letter was received, and the
> letter clearly informed Plaintiff that he had 90 days to file his ADEA claim.
> Plaintiff has provided *no reason or explanation* why he waited over a year to
> amend his complaint.

6  Amend. Order [Dkt. #25], at 4 (emphasis added).[5]  The only reason this Court held the ADEA

7  claim was not time-barred was that the Court deemed it to relate back to the original complaint

8  filed in August 2001 – in other words, as discussed in West's opening brief (West Mem. at 3),

9  the viability of plaintiff's ADEA claim rises and falls with the viability of the original

10  complaint, even though it had no ADEA claim.

11         Thus, even if this "waiting on the EEOC" excuse made any sense, or could constitute

12  "good cause" – neither of which, as discussed below, is true – the record in this case makes it

13  clear that the truth of plaintiff's claim cannot be accepted at face value.  To overcome the

14  substantial record of contrary evidence in this case – much of it out of the mouth of the same

15  counsel that now tries to persuade the Court to accept his representations about "administrative

16  exhaustion" – would require evidence of a fairly convincing nature.  Nothing remotely

17  approaching that level has been submitted to this Court.

18

19

20  _____

21         [5] Plaintiff had, similar to his arguments here, asserted that the purported lack of
prejudice to West provided a basis to excuse the delay, but this Court rejected that argument,
22  stating that "'Although absence of prejudice is a factor to be considered in determining whether
the doctrine of equitable tolling should apply once a factor that might justify such tolling is
23  identified, it is not an independent basis for invoking the doctrine and sanctioning deviations
from established procedures.'"  Amend. Order, at 4 (quoting *Baldwin County Welcome Ctr. v.*
24  *Brown*, 466 U.S. 147, 152 (1984)).

9

1   **III.    PLAINTIFF'S SERVICE WAS NOT DELAYED BY ANY ADMINISTRATIVE
2            EXHAUSTION REQUIREMENT**

3           Even if this Court were to accept at face value plaintiff's assertion that the reason for

4   the service delay was that he was waiting on the EEOC – despite the lack of evidence

5   supporting it and the substantial evidence demonstrating its falsity – that explanation simply

6   makes no sense.  There is no reason why "administrative exhaustion" posed any hurdle to

7   plaintiff meeting the 120-day deadline for service under Nevada law.

8           To begin with, the original complaint alleged no claim under the ADEA; the claims

9   were purely common law (tort and breach of contract).  There is no doctrine of administrative

10  exhaustion applicable, or even any administrative process available, for such claims.

11          Moreover, unlike other federal discrimination statutes (e.g., Title VII), the ADEA does

12  not require the issuance of a right to sue letter as a predicate for bringing suit; a plaintiff may

13  bring suit any time after 60 days following the filing of the charge with the appropriate agency.

14  *See* 29 U.S.C. § 626(d); 29 C.F.R. § 1626.18(b); *Julian v. City of Houston*, 314 F.3d 721, 725-

15  26 (5th Cir. 2002); *Shek v. Stanford Univ. Med. Ctr.*, 2007 WL 2318904, at *3 (N.D. Cal.

16  2007).  In other words, "administrative exhaustion" in the ADEA context simply means filing a

17  charge with the appropriate agency and then waiting 60 days.[6]

18          Plaintiff's formal charge with the NERC and the EEOC was filed May 5, 2000.  Even

19  taking this later filing (rather than the initial intake filing with the NERC in February 2000) as

20  the operative date, plaintiff's ADEA claim was ripe for litigation as early as July 4, 2000.

---

22          [6] In its order vacating and remanding to this Court, the Ninth Circuit did state, in dicta,
23  that "[c]ommencement of an ADEA or Title VII claim without a right to sue letter is grounds
    for dismissal of the action."  *Dillon v. West Pub'g Corp.*, 2011 WL 148823, at *1 (9th Cir.
24  2011).  While this is true for Title VII (and the case cited by the Ninth Circuit, *Wrighten v.
    Metro. Hosp., Inc.*, 726 F.2d 1346 (9th Cir. 1984) is a Title VII, not ADEA, case), the Ninth

25

1    When plaintiff filed his original complaint in August 2001 – over a year later – there was

2    absolutely no principle of administrative exhaustion that prevented him from including an

3    ADEA charge at that time.[7]   There was certainly nothing requiring him to wait nearly 3 years to

4    serve the complaint, and over 3 years to even add the ADEA charge.

5    **IV.    PLAINTIFF'S "REASON" DOES NOT IN ANY CASE ESTABLISH GOOD CAUSE FOR TAKING 573 DAYS TO SERVE**

6           Finally, it is clear from the foregoing that even if plaintiff's unsupported claims were

7    credible, there was nothing that prevented him from serving the complaint within the required

8    120 days.   There was no necessity of administrative exhaustion, as he now suggests.   And

9    plaintiff has made no suggestion whatsoever that he was unable to serve due to difficulties with

10   counsel or difficulties in locating West (such a claim would be quite absurd in any event).   The

11   *best* that plaintiff could possibly establish, even assuming he had put in any evidence to support

12   his claims, was that he filed the complaint to stop the limitations clock and then simply *chose*,

13   unilaterally, to "preserv[e] resources for [his] claim" – by waiting until he deemed it

14   appropriate to prosecute his claim.   This is, in effect, the position stated in plaintiff's own

15   papers.  (Pl.'s Br. at 2.)

16          There is absolutely no support under Nevada law for the proposition that such

17   gamesmanship constitutes "good cause" for ignoring the 120-day service requirement.   No

18   Nevada authority has ever remotely suggested that a plaintiff's desire to "preserve resources for

19   his claim" excuses his obligation to promptly effect service, and plaintiff offers none.

20

---

21   Circuit was simply mistaken to make this unsupported assertion as to the ADEA, as the authorities cited in the text demonstrate.

22        [7]  Thus, plaintiff's claim that the prejudice to West (i.e., the increased liability for

23   backpay) from the late service, *see* West Br. at 11, was "due to the length of the administrative process and the EEOC", Pl.'s Br. at 5, is simply mistaken.   The delay in service was in no way

24   mandated by the EEOC, it was simply plaintiff's choice.

25   1095280_2

1    Certainly, when one examines the factors listed in *Scrimer*, there is nothing about a plaintiff's

2    desire to "preserve his resources."   There is, in fact, not even anything about administrative

3    exhaustion (presumably because, if a plaintiff truly has administrative steps yet to exhaust, then

4    his claim has not yet accrued and there is no reason why he even has to file his claim, thus

5    triggering the 120-day service provision).[8]

6            To allow a plaintiff to stop the limitations clock on his claims by filing a complaint, and

7    then serve whenever he feels it is "efficient," would not only completely eviscerate the timely

8    service requirement, it would completely undermine the purposes of statutes of limitations, i.e.,

9    to require timely prosecution of claims rather than allow them to grow stale and risk loss of

10   evidence, etc.  But even assuming that there was some legitimate reason to hold off litigation in

11   this matter until the EEOC had acted – and, frankly, none has been offered – that was not

12   plaintiff's choice to make.  He could have sought agreement from West to put a stay on the

13   litigation.  He could have served, and then moved the court for a stay pending the EEOC action.

14   But what he could not do is simply decide, for all the parties and for the Court, that it was

15   simply "more efficient" to wait.  Nevada law demands more "good cause" than that.

16

17   _____

18       [8] Plaintiff points to three of the *Scrimer* factors that he claims are implicated here: (1)
     "'the running of the applicable statute of limitations,'" (2) "'the parties' good faith attempts to
19   settle the litigation during the 120-day period,'" and (3) "'the prejudice to the defendant caused
     by the plaintiff's delay in service.'"  Pl.'s Br., at 5 (quoting *Scrimer*, 998 P.2d at 1196).  West
20   has previously discussed the fact that there was indeed prejudice from the late service, and also
     that neither lack of prejudice to the defendant nor the running of the limitations period can
21   suffice to establish good cause.  *See* West Mem. at 11, 14-16.  As for settlement, plaintiff offers
     no evidence that any actual settlement activity was going on during the 120-day period
22   following the filing of the complaint.  Moreover, in *Scrimer* this factor was applied to excuse
     service that was only 13 days late, where there had been active settlement negotiations during
23   the 120-day period.  *See* 998 P.2d at 1192.  Nothing even remotely approaching the 453-day
     delay in this case has ever been excused based on suggestions – and no evidence – of
24   settlement negotiations.

                                                    12

25   1095280_2

1         This case is quite similar to one previously before this Court, in *Salow v. Circus-Circus*

2    *Hotels, Inc.*, 108 F.R.D. 394 (D. Nev. 1985), dismissing for failure to timely serve under the

3    federal rules.    Plaintiff there had originally filed a complaint in state court, which was

4    dismissed; plaintiff appealed to the Nevada Supreme Court.    *Id.* at 395.    To preserve his

5    possible ERISA claim, however, plaintiff filed a complaint in this Court but then took no steps

6    to effect service because, as this Court stated, "Plaintiff does not want to proceed with this case

7    because he would prefer to proceed state court under his state law claims and feels confident

8    that the Nevada Supreme Court will reverse." *Id.* at 396.    The Court dismissed, holding that his

9    non-service was "mere inadvertence" not constituting good cause.    *Id.*; *see also Wei v. Hawaii*,

10   763 F.2d 370, 371-72 (9th Cir. 1985) (plaintiff's failure to take steps to serve because he

11   wanted to wait to amend his complaint did not constitute good cause; neither did counsel's

12   inadvertence); *Vincent v. Reynolds Mem. Hosp., Inc.*, 141 F.R.D. 436, 437-38 (N.D. W. Va.

13   1992) ("[I]ntentional nonservice in order to delay the development of a civil action or to allow

14   time for additional information to be gathered prior to 'activating' the lawsuit" does not

15   constitute good cause).

16        The bottom line, however, is that there is simply no reason to believe that the actual

17   reason was anything other than simple lack of diligence.    Whether this was due to plaintiff's

18   failure to cooperate (as plaintiff's former counsel has told this Court), or due to former

19   counsel's lack of diligence (as plaintiff's current counsel has told this Court), or some

20   combination of both, is of no matter.    None of it establishes a "legitimate excuse," *Scrimer*, 998

21   P.2d at 1193, for service that took 573 days – well over a year longer than the law requires.

22

23

24

25

13

1095280_2

1    **<u>CONCLUSION</u>**

2      For the foregoing reasons, as well as those stated in West's opening brief, and pursuant

3    to the judgment and mandate of the Ninth Circuit, Dillon's service was untimely under Nevada

4    law, and the complaint should be dismissed with prejudice and this matter closed.

5

6          By:_____/s/_____
        James F. Rittinger

7          SATTERLEE STEPHENS BURKE & BURKE LLP
      230 Park Avenue

8          New York, New York 10169 0079
      Telephone: (212) 818 9200

9          Facsimile: (212) 818 9606

10         and

11         Paul J. Georgeson
      MCDONALD CARANO WILSON LLP

12         100 W. Liberty Street, 10th Floor
      Reno, Nevada 89501

13         Telephone: (775) 788 2000
      Facsimile: (775) 788 2020
      Attorneys for Defendant

14

15

16

17

18

19

20

21

22

23

24

25

1095280_2