1

2

3

4                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
5                          **RENO, NEVADA**

6

7
LARRY EDWARD DILLON,                )      3:03-cv-00203-RCJ-WGC
8                                   )
        Plaintiff,                  )      **Order**
9                                   )
vs.                                 )
10                                  )
WEST PUBLISHING CORPORATION; WEST   )
11 GROUP; THOMPSON CORPORATION;     )
THOMPSON LEGAL PUBLISHING           )
12 CORPORATION,                     )
                                    )
13      Defendants.                 )
                                    )
14 _____ )

15
       This is an age discrimination case remanded back to this Court
16
from the Court of Appeals for the Ninth Circuit.  The Court of
17
Appeals remanded the matter to this Court with instructions to
18
analyze Plaintiff's failure to timely serve process under Nevada law
19
and to determine whether Plaintiff has shown good cause for the
20
failure.  The parties have fully briefed and presented oral argument
21
on the issue, rendering it ripe for the Court's determination.
22

23
                            **I. Background**
24
       Plaintiff's employment was terminated on September 1, 1999.
25
(First Am. Compl. ("FAC") ¶ 9 (#26).)  Plaintiff subsequently filed
26
an intake form (Pl.'s Br., Ex. A (#244-1)) with the Nevada Equal
27
Rights Commission ("NERC") on February 22, 2000, resulting in a
28

charge of discrimination dated May 5, 2000. (Pl.'s Br., Ex. B (#244-2).)  Defendants filed their response with the NERC on August 4, 2000. (Pl.'s Br., Ex. C (#244-3).)

Plaintiff filed his original complaint (#2-2) in the Second Judicial District Court for the State of Nevada in and for the County of Washoe (the "State Court") on August 31, 2001, one day shy of the two-year statute of limitations set forth in Nevada Revised Statutes ("NRS") § 11.190(4), alleging five state law causes of action: (1) Civil Conspiracy; (2) Tortious Constructive Discharge in Violation of Public Policy; (3) Breach of Contract; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith Discharge); and (5) Intentional Infliction of Emotional Distress. Plaintiff did not serve the complaint on Defendants at this juncture.

On October 24, 2002, the EEOC issued its right to sue letter. (Pl.'s Br., Ex. D (#244-4).)

On January 3, 2003, the State Court issued an Order (#246-1) noting that no proof of service had yet been filed as required by Nevada Rule of Civil Procedure ("NRCP") 4(i) and requiring Plaintiff to respond within ten days. On January 13, 2003, Plaintiff filed in the State Court an ex parte motion to enlarge time (Pl.'s Br., Ex. D (#244-5)) within which to serve Defendants on the ground that the NERC had concluded its investigation and issued the right to sue letter. The State Court never ruled on Plaintiff's motion to enlarge time (#244-5). Defendants were served on March 27, 2003. (Summons (#2-1).)

2

1    Defendants subsequently removed the action to this Court on
2  April 16, 2003. (Notice of Removal (#2).)  On May 8, 2003,
3  Defendants filed a motion to dismiss (#8) pursuant to Federal Rule
4  of Civil Procedure ("FRCP") 4(m) for failure to serve the summons
5  and complaint on Defendants within 120 days of filing.  After
6  analyzing the issue under federal law, the Court concluded that the
7  120-day clock in FRCP 4(m) started on the day Defendants removed the
8  action to federal district court, regardless of whether service was
9  timely under Nevada law.  We therefore denied (#13) Defendants'
10 motion to dismiss (#8) for untimely service.

11    By Order (#25) on January 21, 2004, we granted Plaintiff leave
12 to file an amended complaint (#26) to add a claim that Defendants
13 illegally fired him on account of his age in violation of the Age
14 Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §
15 621 et seq. (the "ADEA").

16    On August 27, 2004, Defendants moved for summary judgment (#33)
17 on all claims.  We granted (#41) the motion as to Plaintiff's first
18 through fifth causes of action arising under state law, leaving only
19 the ADEA claim.

20    On March 8, 2006, Magistrate Judge McQuaid held a hearing and
21 granted Plaintiff's former counsel's, Movant Shelly T. O'Neill's
22 ("O'Neill"), motion to enforce attorney's lien (#44) recorded
23 against Plaintiff.

24    On September 19, 2007, the case went to jury trial on
25 Plaintiff's claim of age discrimination arising under the ADEA.  The
26 Clerk entered judgment (#110) as amended by the Court's Order (#111)
27 in favor of Plaintiff against Defendants on September 21, 2007.

28                                3

On January 3, 2008, this Court granted (#141) Defendants' motion for a new trial (#132) as to the issue of compensatory damages only, and granted Defendants' motion for judgment as a matter of law (#132) pursuant to Rule 50(b) as to the issue of willfulness.  Thereafter, the Court vacated (#143) the previous judgment for Plaintiff (#110) as amended by the Court's Order (#111).

On July 3, 2008, the Court affirmed (#195) Magistrate Judge McQuaid's ruling (#186) precluding Plaintiff from offering at trial any evidence with respect to any lost back pay for the year 2004.

This case again went to trial on July 8, 2008 on the issue of compensatory damages arising under Plaintiff's ADEA claim.  On July 10, 2008, the Clerk entered judgment (#206) in favor of Plaintiff against Defendants for damages in the amount of $1,730,041.25.  On December 9, 2008, the Court further granted (#220) Plaintiff prejudgment interest and attorney's fees, and denied Defendants' motion for new trial or remittitur (#208) pursuant to Rule 59(a) or to alter or amend the judgment pursuant to Rule 59(e).

Defendants filed their Notice of Appeal (#222) on December 19, 2008 and Plaintiff filed his Notice of Appeal (#224 on January 6, 2009.

On January 18, 2011, the Court of Appeals entered its Memorandum (#238) whereby it reversed this Court's Order (#13) finding that Plaintiff had not failed to timely serve Defendants under the Federal Rules, with instructions to analyze the issue under Nevada law.  The Court of Appeals further found that the jury instructions were erroneous in light of intervening Supreme Court

4

case law, <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S.Ct. 2343 (2009), and would require a new trial should the Court not dismiss the case on the untimely service issue.  The Court of Appeals affirmed this Court in all other respects.  In conformity therewith we ordered (#241) the parties to brief the service of process issue.

Defendants submitted their memorandum (#242) and supporting affidavit of Paul Georgeson (#243) on March 3, 2011.  Plaintiff submitted his response (#247) on March 10, 2011.

Plaintiff also submitted his memorandum (#244) on March 3, 2011.  Defendants responded (#245) with a second affidavit of Paul Georgeson in support thereof (#246) on March 10, 2011.  Plaintiff subsequently submitted a declaration of Craig Demetras (#250) in support of his memorandum (#244) on March 13, 2011.  Defendants responded (#251) to the declaration (#250) and submitted the affidavit of Steven A. Moll (#252) on March 14, 2011.

On January 17, 2012, we heard the parties' oral argument with regard to the service of process issue according to Nevada law.


**II. Legal Standard**

"To avoid dismissal of a case, NRCP 4(i) requires a party who fails to effectuate service of process within 120 days from the filing of the complaint to demonstrate good cause for the delay of service."  <u>Saavedra-Sandoval v. Wal-Mart Stores</u>, 245 P.3d 1198, 1199

(Nev. 2010) (en banc).  In its entirety, the pre-2004 version of NRCP 4(i)[1] provides as follows:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

NRCP 4(i) (2003).  Dismissal without prejudice[2] is therefore "mandatory unless there is a legitimate excuse for failing to serve within 120 days." Scrimer v. Eighth Judicial Dist. Court, 998 P.2d 1190, 1193 (Nev. 2000) (citation omitted).

"The determination of good cause is within the district court's discretion." Id.  In Scrimer, the Nevada Supreme Court articulated a "balanced and multifaceted" analysis to guide a court's determination of good cause under NRCP 4(i). Id. at 1196.  The Scrimer Court set down ten factors to consider, emphasizing that no single factor is controlling:

(1)  difficulties in locating the defendant,

(2)  the defendant's efforts at evading service or concealment of improper service until after the 120-day period has lapsed,

(3)  the plaintiff's diligence in attempting to serve the defendant,

(4)  difficulties encountered by counsel,

---

[1] NRCP 4(i) was amended in 2004 to also require the party to move to enlarge the time for service prior to the expiration of the 120-day service period. Saavedra-Sandoval, 245 P.3d at 1199.

[2] Although NRCP 4(i) specifically requires dismissal without prejudice, the Nevada Supreme Court has noted that a dismissal pursuant to the Rule is effectively with prejudice where the statute of limitations has run. Scrimer, 998 P.2d at 1194-95.

6

(5)   the running of the applicable statute of limitations,

(6)   the parties' good faith attempts to settle the litigation during the 120-day period,

(7)   the lapse of time between the end of the 120-day period and the actual service of process on the defendant,

(8)   the prejudice to the defendant caused by the plaintiff's delay in serving process,

(9)   the defendant's knowledge of the existence of the lawsuit, and

(10)   any extensions of time for service granted by the district court.

Id. at 1196 (footnote omitted).  The Court further explained that "[u]nderlying these considerations is the policy behind Rule 4(i) - to encourage the diligent prosecution of complaints."  Id.  However, Rule 4(i) does not function as an automatic sanction when a plaintiff fails to serve within 120 days in light of competing "good public policy [that] dictates that cases be adjudicated on their merits."  Id. (internal quotation and citations omitted).

**III. Discussion**

Plaintiff submits he has good cause for failing to serve Defendants until 473 days after the expiration of the 120-day period prescribed by NRCP 4(i).  Specifically, Plaintiff argues that he filed the complaint in the State Court on the last possible day to prevent the running of the statute of limitations, but was waiting to serve the complaint and instigate the lawsuit until the NERC/EEOC had made its finding and issued a right to sue letter.  (Pl.'s Br. at 1-2 (#244).) ("It made sense to attempt to resolve all disputes

surrounding Mr. Dillon's termination administratively prior to a full blown lawsuit with its increased costs.").

To begin, the Court addresses Defendants' claim that waiting on the administrative process is not the real reason for Plaintiff's delay in service. In support of their argument, Defendants point to a number of instances where Plaintiff failed to make the administrative process excuse, such as in its response (#11) to Defendants' motion to dismiss (#8) for untimely service in 2003, and in a 2006 hearing to determine whether an attorneys' fee lien was appropriate given the late service. However, the record shows that this reason for delay was presented early in the proceedings. On January 13, 2003, albeit upon the State Court's instigation, Plaintiff submitted an ex parte motion to enlarge time (Pl.'s Br., Ex. E (#244-5)) for service to the State Court, stating as his reason that he had filed the complaint in August 2001 to avoid the running of the statute of limitations, but that he waited to serve Defendants until the NERC/EEOC concluded its investigation and issued a right to sue letter. The fact that Plaintiff did not repeat the argument until the issue became refined through the course of litigation does not move the Court.

The Court now turns to the factors set forth by the Nevada Supreme Court in Scrimer to determine whether Plaintiff has demonstrated good cause for untimely service pursuant to NRCP 4(i). The Court finds that the first four Scrimer factors fall squarely in favor of Defendants. The first Scrimer factor, difficulties in locating the defendants, indisputably comes out in favor of Defendants. Defendants argue and Plaintiff does not deny that

1  Defendants were not difficult to locate and that, in any event, this

2  was not a reason for Plaintiff's delay.  Likewise, the second

3  Scrimer factor, a defendant's efforts at evasion or concealment of

4  improper service, was not an issue here and therefore falls in favor

5  of Defendants.  The third Scrimer factor, the plaintiff's diligence

6  in attempting service, also falls in favor of Defendants because it

7  appears that Plaintiff made no attempt to serve Defendants until

8  March of 2003, and certainly not during the 120-day period.  The

9  fourth factor, difficulties encountered by counsel, falls in

10 Defendants' favor because Plaintiff has alleged no difficulty in

11 serving Defendants and that, again, is not the stated reason for the

12 late service.

13      The fifth Scrimer factor, the running of the applicable statute

14 of limitations, falls squarely in Plaintiff's favor: the applicable

15 statute of limitations ran in August 2001.  In fact, Plaintiff filed

16 his complaint on the last possible day in order to avoid the running

17 of the statute of limitations.  For this reason, Plaintiff would be

18 extremely prejudiced were the Court to dismiss his claim.  Even

19 though NRCP 4(i) requires a court to dismiss a case without

20 prejudice where good cause for untimely service has not been shown,

21 the Nevada Supreme Court has noted that such a dismissal is

22 "effectively with prejudice, since the statute of limitations ha[s]

23 run."  Scrimer, 998 P.2d at 1195.  Here, this factor is of

24 particular import because if the Court dismisses the case, it will

25 do so contra "good public policy [that] dictates that cases be

26 adjudicated on their merits," Scrimer, 998 P.2d at 1196 (citations

27

28                                        9

1  omitted), which would not be the case had the statute of limitations
2  not yet run in this case.

3      The parties dispute the application of the sixth <u>Scrimer</u>
4  factor, the parties' good faith attempts to settle the litigation
5  during the 120-day period.  Plaintiff has submitted a declaration of
6  Craig Demetras (#250), Plaintiff's former counsel, averring that the
7  firm was in contact with general counsel for Defendants, Steven A.
8  Moll, in an attempt to settle the matter.  In response, Defendants
9  have submitted an affidavit of Steven A. Moll (#252) averring that
10 no such settlement discussion ever took place and that the document
11 attached to Mr. Demetras' declaration (#250) does not reflect a
12 settlement communication.  We have reviewed the evidence and now
13 determine that the parties were not engaged in good faith settlement
14 negotiations during the period of delay.  Plaintiff's evidence does
15 not indicate ongoing settlement negotiations, but merely indicates
16 the parties' respective acknowledgments of the ongoing proceedings
17 before the NERC/EEOC.

18     However, the parties were engaged in the administrative action
19 before the NERC/EEOC, and Plaintiff's stated reason for the untimely
20 service is that he was awaiting the result of the administrative
21 process.  According to 29 U.S.C. § 626(d)(2), the Equal Employment
22 Opportunity Commission is charged with notifying all prospective
23 defendants in an effort to "promptly seek to eliminate any alleged
24 unlawful practice by informal methods of conciliation, conference,
25 and persuasion."  A resolution by the NERC/EEOC would have resulted
26 in savings to both parties and rendered a lawsuit unnecessary.  For
27 this reason, the rationale underlying this <u>Scrimer</u> factor applies

28                                    10

here.   However, the Court finds it telling that Plaintiff still did
not serve Defendant until March 27, 2003, five months after the
NERC/EEOC issued the letter.  If this were the reason for
Plaintiff's delay, Plaintiff should have served Defendants sooner.
Plaintiff's filing of an ex parte motion to enlarge time to serve
(#244-5) on January 13, 2003, at the State Court's instigation, was
also decidedly tardy and does not excuse this additional period of
delay in service of process.  Moreover, the original complaint filed
in State Court and removed here did not include a claim of age
discrimination, the issue that Plaintiff was purportedly waiting on
the NERC/EEOC to resolve.  (See Complaint (#2-2).)  Because we find
that there were no ongoing active settlement negotiations during the
period of delay, and because Plaintiff waited an additional five
months after the NERC/EEOC issued its right to sue letter, we find
that the sixth Scrimer factor falls in Defendants' favor.

     The lapse of time between the end of the service period and the
actual service comprises the seventh Scrimer factor, and it falls
decidedly in Defendants' favor.  Plaintiff did not serve the
complaint and summons upon Defendants until March 2003, 453 days
after the expiration of the 120-day period, and 573 days after the
filing of the complaint on September 30, 2001.  Defendants correctly
assert that the Nevada Supreme Court has never excused a delay of
this magnitude.  For example, in Dallman v. Merrell, the Nevada
Supreme Court affirmed the dismissal of a defendant who was served
108 days late due to Plaintiff's difficulty in locating the
defendant.  803 P.2d 232, 232-33 (1990).  In Dougan v. Gustaveson,
the court upheld a dismissal of a complaint filed just before the

statute of limitations ran when process was served only eight days late because a secretary had erroneously calendared the date service was due.  835 P.2d 795, 797 (1992) (holding that good cause was not present because "inadvertence does not justify untimely service."). Finally, in Saavedra-Sandoval v. Wal-Mart Stores, the court found that a plaintiff failed to establish good cause for delay in filing a motion to enlarge time for service, even though the plaintiff had improperly served the co-manager of a Wal-mart store, and then subsequently sent a notice of default to Wal-mart claims investigations, to which Wal-mart ultimately responded.  245 P.3d 1198, 1201-02; see also Sipes v. Galaxy Airlines, Inc., 119 F.R.D. 691, 692-693 (D. Nev. 1988) (dismissing case under federal rule and finding that pro se plaintiff's ignorance of the rule did not establish good cause for one month delay in service, in spite of the running of the statute of limitations); Salow v. Circus-Circus Hotels, Inc., 108 F.R.D. 394, 395-96 (D. Nev. 1985) (finding no good cause for one-year delay in service under federal rule where plaintiff filed merely to avoid statute of limitations and elected not to proceed on federal claim while Nevada Supreme Court considered his state appeal).

The parties also dispute the extent to which Plaintiff's delay in service has caused prejudiced to Defendants - the eighth Scrimer factor.  Plaintiff argues that Defendants have suffered no prejudice due to the delay, given that they were on notice of the proceedings before the NERC/EEOC in 2000.  Defendants argue that Plaintiff's untimely service has effectively earned Plaintiff over a year in additional backpay because the Court ruled that Plaintiff was

1  entitled to backpay up to an including the date of judgment.
2  However, the judgment in Plaintiff's favor has been vacated and
3  Defendants cannot show prejudice beyond speculation should the case
4  again go to trial.  Moreover, should Plaintiff again win a judgment
5  against Defendants, the Court is willing to entertain arguments as
6  to why Plaintiff should not be entitled to the additional backpay.
7  The Court also notes that the fact that the incidents underlying
8  this case happened in 1999 and many witnesses are no longer employed
9  by Defendants is insufficient to demonstrate prejudice to
10 Defendants.  For this reason, this factor falls in Plaintiff's
11 favor.

12      The ninth <u>Scrimer</u> factor, a defendant's knowledge of the
13 existence of the lawsuit, falls in neither party's favor.
14 Defendants were aware of the proceedings before the NERC/EEOC and
15 Plaintiff's charges of age discrimination; however, they were not
16 aware of the lawsuit filed in State Court alleging five causes of
17 action arising under state law.

18      The tenth <u>Scrimer</u> factor, any extensions of time for service
19 granted by the district court, falls in Defendants' favor because
20 Plaintiff was never granted any extension of time for service.

21      Finally, the Court must take these factors in consideration in
22 light of the policy behind NRCP 4(i), to encourage the diligent
23 prosecution of complaints, and competing public policy that dictates
24 that cases be adjudicated on their merits.  <u>See</u> <u>Scrimer</u>, 998 P.2d at
25 1196.  The only excuse Plaintiff offers for the delay in service is
26 that he filed the complaint merely to avoid the running of the
27 statute of limitations and then unilaterally chose to await the

28                                        13

1  determination of the EEOC/NERC before serving Defendants.  Even if

2  this were a legitimate excuse, which it is not, Plaintiff still did

3  not serve Defendants until five months after the issuance of the

4  right to sue letter.  The only <u>Scrimer</u> factors that fall in

5  Plaintiff's favor are the fifth factor regarding the running of the

6  statute of limitations, a problem of Plaintiff's own creation, and

7  the eighth factor regarding prejudice to Defendants.  Given that the

8  vast majority of the <u>Scrimer</u> factors fall in Defendants' favor, and

9  the incredible magnitude of the delay, even after the issuance of

10 the right to sue letter, the Court cannot find good cause on this

11 basis.  The complaint must be dismissed.

12                         **IV. Conclusion**

13      The Court finds that Plaintiff has failed to show good cause

14 for untimely service upon Defendants.  The majority of the <u>Scrimer</u>

15 factors fall in Defendants' favor, and Plaintiff's proffered excuse

16 of waiting on the administrative process does not stand up to

17 scrutiny and fails to justify a delay of almost five hundred days.

18 In spite of the harsh result it visits upon Plaintiff, the complaint

19 (#2-2) must be dismissed pursuant to Nevada Rule of Civil Procedure

20 4(i).

21      **IT IS, THEREFORE, HEREBY ORDERED** that the case is **DISMISSED**.

22      The Clerk shall enter judgment accordingly.

23

24

25 DATED: June 12, 2012.

26

27                              UNITED STATES DISTRICT JUDGE

28                                   14